**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Jackson, | No. CV-25-04664-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Upgrade Loans Incorporated, | |
| Defendant. | |

Plaintiff Justin Jackson asserts many claims against Defendant Upgrade, Inc., related to his involuntary employment separation. Upgrade moves to compel arbitration and stay proceedings. (Doc. 8.) Jackson opposes. The motion will be granted.

## I.

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1 *et seq.* Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA's "provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The Court's role under the FAA is thus limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016) (internal citation omitted). Generally, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). But where the issue is whether there is an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the burden of showing that it exists. *See, e.g.*, *Sanford v. MemberWorks*, *Inc.*, 483 F.3d 956, 962–64 (9th Cir. 2007). Courts apply state-law principles to determine whether an agreement to arbitrate is valid. *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

## II.

Upgrade hired Jackson as a team lead for its account servicing department. (Doc. 11 at 7) He later applied for a supervisory position on the loan servicing team. (*Id.*) Upgrade hired someone else. (*Id.*) A few months later, Upgrade terminated Jackson's employment after finding that he allegedly failed to verify external account requests per company protocol designed to avoid disclosure of customer information to fraudsters. (*Id.*)

### A.

As part of his employment with Upgrade, Jackson signed a Mutual Arbitration Agreement. (Doc. 15.) Under the Agreement, the FAA "applies to this Agreement . . . [and] [a]ll disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration **and not by way of court or jury trial**."

1    (*Id.* at 4.)

2        Jackson does not dispute the existence of the Agreement. Instead, he advances many

3    arguments against enforcement that he claims represent unfairness at the administrative

4    remedy stage. None of them have merit.

5        Jackson's contention that the Agreement should not be enforced because Upgrade

6    did not disclose it to the Arizona Civil Rights Division during its administrative

7    investigation of his complaint fails. Whether Jackson exhausted statutory administrative

8    remedies does not impact the enforceability of an arbitration agreement in later civil

9    proceedings. And as Upgrade argues in its reply brief, the Agreement was not relevant to

10   the Civil Rights Division's investigation.

11       Next, Jackson argues that Upgrade's failure to disclose the Agreement to the Civil

12   Rights Division renders his administrative rights "illusory." He also contends that

13   Upgrade's conduct during the investigation, "requesting multiple extensions, withholding

14   the agreement, and submitting false or misleading information," ultimately "resulted in a

15   'no probable cause' dismissal, depriving Plaintiff of Attorney General review and

16   enforcement." (Doc. 11 at 3.) These arguments lack merit. Jackson had the opportunity to

17   pursue his claims with the appropriate state regulator. Insofar as Jackson claims Upgrade

18   failed to provide appropriate documentation to the regulator, those arguments do not

19   invalidate an otherwise valid arbitration agreement. If Jackson felt that Upgrade abused its

20   position during the regulatory process, he could have (and should have) alerted the Civil

21   Rights Division regulators, providing them an opportunity to address these issues.

22       To the extent Jackson argues that the agreement is unenforceable under the doctrine

23   of procedural unconscionability, that argument lacks merit. He alleges that he was paid

24   only "$26.92 per hour at the highest point of employment, [and] had limited options and

25   risked termination by refusing to sign." (*Id.*) "But under Arizona law a finding of adhesion

26   does not render an agreement procedurally unconscionable." *Shelby v. Brookdale Senior*

27   *Living, Inc.*, No. 21-15547, 2022 WL 1657245, at *2 (9th Cir. May 25, 2022) (citing

28   *Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 151 (1992) ("Our conclusion

that the contract was one of adhesion is not, of itself, determinative of its enforceability.").

The Court finds that the Mutual Arbitration Agreement is valid and enforceable.

**B.**

The Agreement explains that the parties must arbitrate "any dispute that the Company may have against You or that You may have against the Company." (Doc. 15 at 4.) Jackson does not contest the scope of the Agreement. Even so, the Court finds that the scope of the Agreement as explained in its Section 1 is broad enough to cover all of Jackson's asserted claims. (*Id.* at 4) The Court therefore finds that the Agreement covers the claims asserted in the complaint.

**IT IS THEREFORE ORDERED** that the Motion to Compel Arbitration and Stay Proceedings (Doc. 8) is **GRANTED**. The parties must pursue arbitration according to the terms set forth in the Mutual Arbitration Agreement.

**IT IS FURTHER ORDERED** that the proceedings in this case are **STAYED**.

**IT IS FURTHER ORDERED** that the parties must provide a joint status report on the progress of arbitration no later than **Monday, March 2, 2026**. A joint status report must be filed every three months thereafter until the conclusion of arbitration proceedings.

**IT IS FINALLY ORDERED** that the parties must file a joint report within seven calendar days after the conclusion of arbitration proceedings. The joint report must advise the Court whether [a] the stay can be lifted and [b] this case can be dismissed.

Dated this 12th day of January, 2026.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge